# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNVERFERTH MFG. CO., INC., <br><br> Plaintiff/Counter-Defendant, <br><br> vs. <br><br> MERIDIAN MFG., INC., <br><br> Defendant/Counter-Claimant. | No. 19-CV-4005-LTS-KEM <br><br> **MEMORANDUM OPINION AND ORDER** |

In this patent case, Defendant/Counter-Claimant Meridian Manufacturing, Inc., seeks leave to amend its invalidity contentions months after the deadline set by the scheduling order. Plaintiff/Counter-Defendant Unverferth Manufacturing Co. resists. I **deny** the motion to amend. Doc. 99.

## I. BACKGROUND

Unverferth initiated this patent-infringement lawsuit against Meridian in January 2019. Doc. 1. Under the court's scheduling order, Meridian disclosed its initial invalidity contentions in June 2019, and its final invalidity contentions were due July 17, 2020. Docs. 22, 73. Unverferth had until August 3, 2020, to respond with its final validity contentions. Doc. 73. Meridian's final invalidity contentions asserted, *inter alia*, that Unverferth's patents were obvious in light of drawings of the Convey-All BT1500 Seed Tender (BT1500). They do not reference the BT1500 machine itself because at the time its final invalidity contentions were due, Meridian had not yet accessed a BT1500 machine in person.

The parties agreed to make certain relevant machines available for inspection on August 20 and 21, 2020. *See* Doc. 100-10. In setting the date, Meridian indicated the

four machines it would make available, and it also noted it had been unable to locate two relevant machines. *Id.* Meridian did not mention the BT1500. *Id.* One week before the date of the scheduled inspection, Meridian located a farmer willing to rent out a BT1500, and on August 20, Meridian, Unverferth, and their experts examined the BT1500 (along with other machines).

According to Meridian, it "spent several months tracking down a BT1500." Doc. 99-1. This was no simple task, since the BT1500 is "nearly twenty years old," and only five units were ever produced. Docs. 99-1, 103. Meridian notes that it "searched for the dealership that originally sold the BT1500 units" and asked the dealership—as well as an auction house and a second dealership—to review twenty-year-old sales records, before finding a farmer that agreed to rent the BT1500 to Meridian. *Id.*

After its expert examined the BT1500 on August 20, "Meridian realized the BT1500 . . . renders obvious or anticipates many of the asserted claims." Doc. 99-1. Still, Meridian did not move to supplement its invalidity contentions right away. In mid-November 2020, the court granted a motion to compel and extended the scheduling-order deadlines, moving the Plaintiff and Counter-Plaintiff expert-disclosure deadline from November 13 to December 11, 2020 (other deadlines were correspondingly shifted, including the close of discovery to mid-March 2021). Docs. 81, 98.

On December 2, 2020, Meridian sent Unverferth pictures of the BT1500 taken during the August 20 inspection, indicating it mistakenly believed it had previously produced the pictures. Doc. 99-9 at 7-8. Unverferth responded on December 7, questioning Meridian's late focus on the BT1500, noting Meridian failed to include the BT1500 machine in its final invalidity contentions or notice of inspection. *Id.* at 6-7. Meridian responded on December 8, noting that following the inspection, Meridian conferred with its expert and decided to supplement its invalidity contentions. *Id.* at 5-6. Unverferth responded the next day that supplementation was untimely, noting Meridian's position was that "it has been conferring with its expert since the August 20,

2020 inspection and just now, on December 8, 2020," decided to supplement "(three and a half months later, four and a half months after the exchange of the final contentions, . . . and three days before the exchange of opening expert reports)." *Id.* at 4. The parties met and conferred by telephone about the issue on December 10.

The next day, on December 11, 2020, Meridian filed the motion to supplement its invalidity contentions, seeking to add theories of invalidity based on the BT1500 machine. Doc. 99. It also sought—in the words of its opening brief—to "clarify some of the combinations that it previously disclosed." Doc. 99-1. Unverferth resisted. Doc. 100. Meridian filed a reply, and I granted leave for Unverferth to file a sur-reply over Meridian's objection. Docs. 103, 106-108.

## II. DISCUSSION

Meridian seeks to amend its final invalidity contentions after the expiration of the deadline set by the scheduling order. A scheduling-order deadline "may be modified only for good cause and with the judge's consent." **Fed. R. Civ. P. 16(b)(4)**. Thus, courts have held that a party must demonstrate good cause to amend its invalidity contentions after the deadline has passed. *See* ***Solutran, Inc. v. U.S. Bancorp***, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *3 (D. Minn. Dec. 20, 2016); ***Joao Bock Transaction Sys., LLC v. Online Res. Corp.***, No. 8:13CV245, 2015 WL 9459917, at *3-4 (D. Neb. Dec. 23, 2015); ***Prism Techs., LLC v. AT & T Mobility, LLC***, No. 8:12CV122, 2014 WL 656794, at *1 (D. Neb. Feb. 19, 2014); ***ICON Health & Fitness, Inc. v. Octane Fitness, LLC***, No. CV 09-319 ADM/SRN, 2010 WL 1839321, at *1 (D. Minn. May 5, 2010).

The purpose of invalidity contentions is "to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case." ***O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.***, 467 F.3d 1355, 1365 (Fed. Cir. 2006). By imposing a

3

deadline for final invalidity contentions, the court "seek[s] to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Id.* at 1366. Because the purpose of invalidity contentions is to provide the opposing party with notice, a party must "proceed with diligence in amending those contentions when new information comes to light in the course of discovery"; to provide otherwise would render "the contentions requirement . . . virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *Id.* at 1365-66. Based on this reasoning, the Federal Circuit has held that the good-cause standard requires "[t]he party seeking to amend its contentions" to "prov[e] it acted with diligence." *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1321 (Fed. Cir. 2016). In determining whether there is good cause to amend, the court may also consider prejudice to the nonmoving party, but "it is unnecessary to examine the potential prejudice" if the party seeking amendment did not act diligently. *Allvoice Devs. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1015 (Fed. Cir. 2015).

### A. BT1500

Meridian seeks to amend its invalidity contentions to add new theories of obviousness based on the BT1500. Meridian's final invalidity contentions (disclosed in July 2020) included some theories of obviousness based on drawings of the BT1500, but Meridian seeks to assert new combinations involving the BT1500 machine that were not previously disclosed (whether based on the drawings or the machine itself). Meridian argues that it acted diligently since it spent several months searching for a BT1500 machine, and both its expert and Unverferth's expert had an opportunity to examine the BT1500 machine at the same time, a week after Meridian located one. Further, Meridian argues that the BT1500 machine itself illustrates obviousness arguments that were not clear from the previously available drawings and pictures.

4

"[T]he diligence inquiry has two sub-parts: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Solutran*, 2016 WL 7377099, at *2. Meridian argues that it seeks to amend based on new information—namely, the discovery of the BT1500 machine, which had not been located at the time Meridian's final invalidity contentions were due in July 2020. Although new information may sometimes provide the requisite good cause to amend,[1] here, Meridian does not dispute that it has known about the BT1500 since receiving Unverferth's initial disclosures in April 2019, which included (1) the prosecution history of Unverferth's patents (in which patent examiners considered pictures of the BT1500) and (2) information from Unverferth's prior patent litigation with a third party, whose invalidity contentions relied on the BT1500. *See* Doc. 100 at 9-10. Meridian argues that the pictures of the BT1500 did not show the "crucial elements of a patent," which is why it needed to examine a BT1500 machine in person. Doc. 103. But Meridian admits that the pictures and information it has possessed since April 2019 were enough to make it "suspect[] that the BT1500 was a stronger prior art reference" than the third party or Unverferth "made it out to be." Doc. 99-1. Although Meridian asserts that it searched for "several months" (more than two) before finally locating a BT1500 to rent in August 2020, it does not explain why it did not begin looking for a BT1500 machine earlier in time. Meridian does not set forth with particularity when precisely it began looking for a BT1500 machine, but it seems like it was about a year after receiving information about the BT1500 in April 2019. If Meridian had begun searching for a BT1500 machine earlier in time, it could have located a machine prior to the July 2020 deadline for final invalidity contentions.

---

[1] *See O2 Micro,* 467 F.3d at 1366 ("[R]efusing to allow any amendment to contentions based on new information developed in discovery could be contrary to the spirit of the Federal Rules.").

5

Even if Meridian could be said to have acted diligently in locating the BT1500 machine, Meridian has not demonstrated diligence in moving to amend. The parties and their experts examined the BT1500 machine on August 20, 2020. Meridian did not move to amend its final invalidity contentions until December 11, 2020, more than three and a half months later. Meridian argues that during that time, it was engaged in depositions and briefing discovery motions, and it notes it needed to confer with its expert about its invalidity theories. But that Meridian had other obligations in this case does not explain why it could not have moved to amend earlier in time. And Meridian's expert examined the BT1500 machine during the August 2020 inspection, and Meridian should have known at that time that it needed to supplement its invalidity contentions. Courts have held that when a party waits three months to amend after discovering new evidence, the diligence requirement is not met. *See O2 Micro*, 467 F.3d at 1367 (holding that district court did not abuse its discretion in finding lack of diligence and denying leave to amend when party learned of new evidence during a deposition in "late February 2003" but "waited almost three months, until May 23, to serve its proposed amended contentions and two more weeks to formally move to amend"; court rejected lawyers' excuse that they "were busy with discovery during the delay period from February 25 to June 6," since they did not "explain the relationship between this work and the" new invalidity theory); *Solutran*, 2016 WL 7377099, at *2-4 (finding lack of diligence and denying leave to amend based on new evidence discovered approximately two months earlier when moving party "first focused on incorporating [the new evidence] into their expert report, rather than seeking leave to amend their invalidity contentions"); *see also Allvoice*, 612 F. App'x at 1015 (holding that district court did not abuse its discretion in finding lack of diligence and denying leave to amend based on a different claim-construction ruling than anticipated when moving party did not move to amend until three months after court's ruling). Here, Meridian waited to move to amend its invalidity contentions until the day opening expert reports were exchanged, more than three and a

6

half months after examining the BT1500 machine and more than four and a half months after the deadline for final invalidity contentions. Meridian has not shown it acted diligently in seeking amendment.

Accordingly, leave to amend based on the BT1500 should be denied, regardless of any prejudice to Unverferth. Meridian has not demonstrated diligence and thus, it has not demonstrated good cause to amend.

### B. *Other New Contentions*

Meridian's opening brief asserts that it seeks to "clarify some of the combinations that it previously disclosed." Doc. 99-1. Although Meridian's opening brief addresses these changes when discussing prejudice, it does not make any argument showing how it was diligent in raising these combinations. *Id.* In its reply brief, Meridian still fails to address diligence, instead arguing that the proposed changes "narrow, not expand, its combinations"; that the combinations are not "entirely new"; and that it did not need to amend "but chose to do so as a way of alerting Unverferth of its refined theories." Doc. 103.

Meridian mischaracterizes its proposed amendments. As Unverferth notes, Meridian's proposed amended invalidity contentions do not remove any of its prior obviousness combinations. *See* Docs. 99-8, 100-8. Thus, its proposed amendment does not "narrow" its invalidity contentions.

Instead, Meridian's proposed amendments add that certain claims are obvious by the combination of the Forsyth and Sawby patents and obvious by the combination of the Furrer and Sawby patents. *Id.* Meridian argues that these theories are not new because it previously contended (and still does) that certain claims "are obvious over Furrer . . . in view of" Forsyth "and/or" several other patents, including Sawby. *Id.* But as Unverferth notes in its sur-reply, Meridian's current invalidity contention relies on Furrer as a base reference, while one of its proposed new contentions eliminates reference to

7

Furrer. In addition, the proposed new contention seeks to invalidate claim 24 of the '047 patent and claims 4, 11, 19, and 23 of the '940 patent, which were not included in Meridian's previous Furrer/Forsyth/Sawby contention. As the proposed new contention seeks to invalidate additional claims for obviousness, it does not merely narrow Meridian's previous disclosures. Meridian offers no reason for why it did not include its theories of obviousness based on Furrer and Sawby and Forsyth and Sawby in its final invalidity contentions at the end of July 2020. Accordingly, Meridian has not demonstrated it acted diligently, and leave to amend should be denied, regardless of prejudice to Unverferth.

### III. CONCLUSION

Meridian's motion to amend its invalidity contentions (Doc. 99) is **denied**.

**IT IS SO ORDERED** this 28th day of January, 2021.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa